This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41532

**STATE OF NEW MEXICO**

Plaintiff-Appellee,

v.

**KERRY BEGAY, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Aletheia V.P. Allen, Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief, pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief and answer brief, we affirm for the following reasons.

**{2}** Defendant appeals from a jury trial conviction for battery on a peace officer, contrary to NMSA 1978, Section 30-22-24 (1971), as set forth in the district court's judgment and sentence. [SRP 152-56] At trial, Defendant asserted that his actions were in self-defense, and the district court instructed the jury to consider his defense accordingly. [RP 130] On appeal, Defendant asserts that the State failed to present sufficient evidence that Defendant was not acting in self-defense when he kicked the corrections officer. [BIC 7]

**{3}** "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (omission, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re[]weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted). We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)).

**{4}** Again, in this appeal, Defendant specifically challenges the sufficiency of the evidence the State presented to prove that Defendant did not act in self-defense. The jury instruction regarding self-defense required the State to prove beyond a reasonable doubt that Defendant did not act in self-defense; the district court instructed the jury that Defendant acted in self-defense if the following elements were met: (1) the corrections officer "used greater force than reasonable and necessary by applying handcuffs"; (2) "[t]here was an appearance of immediate danger of bodily harm to [Defendant] as a result of the application of the handcuffs"; (3) Defendant "was in fact put in fear of immediate bodily harm and kicked [the corrections officer] because of that fear"; (4) Defendant "used an amount of force that [D]efendant believed was reasonable and necessary to prevent the bodily harm"; and (5) the "apparent danger would have caused a reasonable person in the same circumstances to act as [Defendant] did." [RP 130] Defendant challenges the sufficiency of the State's evidence as to each of these five elements. [BIC 10-14]

**{5}** According to the parties' briefs, the following material evidence was presented at trial. On the date of incident, Defendant was incarcerated at the San Juan County Detention Center. [BIC 1; AB 1] The corrections officer testified that in accordance with policy for recreational periods, he approached Defendant's cell, opened the food port to the cell, and through the food port applied handcuffs and a belt restraint to Defendant. [BIC 1; AB 1-2] Next, the corrections officer let Defendant out of the cell to apply leg

restraints. [AB 2] The corrections officer testified that once Defendant was out of his cell, he began "jerking his right hand out of his cuff," pulling his hand away from the officer, and stating that the "cuffs were too tight." [AB 2]

{6}     The corrections officer testified that he checked the tightness of each of Defendant's handcuffs by inserting his index finger into the gap between the handcuff and Defendant's wrist and moving his finger back and forth to assess the tightness on the sides. [BIC 2; AB 2] The corrections officer testified about how tight the handcuffs should be generally. [AB 2-3] As to Defendant's handcuffs, the corrections officer testified that he determined that his handcuffs were loose on the sides of the wrist and thus "fine," and that he informed Defendant of this. [AB 3] Defendant again stated that the handcuffs were too tight. [BIC 2; AB 3] The corrections officer once more checked the handcuffs with his index finger, and once more deemed the handcuffs sufficiently loose. [AB 3] The corrections officer testified that he again told Defendant that the handcuffs were "fine" and also told Defendant that he was "not checking [the handcuffs] again." [AB 3] After this check, Defendant began jerking his right hand again and then suddenly kicked [the corrections officer] on the inner left thigh with his right foot. [BIC 2; AB 3]

{7}     After being struck by Defendant, the officer testified that he requested assistance from other corrections officers, while Defendant "continued to charge," "approaching [the corrections officer] in an aggressive way." [AB 3] The corrections officer and a second officer "forcibly" returned Defendant to his cell. [BIC 2-3; AB 3] The corrections officer further testified that "the jerking motion Defendant was employing while handcuffed would cause the side of the wrist to come into contact with the handcuff." [AB 4]

{8}     The State also presented the testimony of the senior corrections officer who investigated the incident afterwards. [BIC 3; AB 4] This senior officer testified that, when speaking with Defendant about the incident, Defendant repeatedly brought up the issue with the handcuffs being too tight and having pain inflicted on him by the tightness of the cuffs. [BIC 3, AB 4] The senior corrections officer also testified that Defendant had "scrapes" on his wrist area "like an abrasion" and additionally acknowledged a report of the incident that mentioned Defendant was bleeding at the wrist following the encounter. [AB 4]

{9}     Defendant testified on his own behalf. [BIC 4; AB 4] Defendant testified that his handcuffs were not sufficiently loose, and instead the handcuffs cut into the "widest part of [his] wrist on both sides." [AB 5] He testified that the handcuffs had "started to scratch into [his] skin," that he "started bleeding," and that he "still [has] scars and [a] wound" from the application of the handcuffs. [AB 5] Defendant asserted that the painful handcuffs induced him to kick the corrections officer, and he reacted because he knew he would have to be in the tight handcuffs for two hours during the recreation period. [BIC 5; AB 5] Defendant showed the scars on his wrists to the jury. [BIC 5]

**{10}** During his testimony, Defendant also disputed that the index-finger assessment that the corrections officer used would be an effective gauge of how tight the handcuffs were and stated that the corrections officer's check was ineffective. [AB 5] Defendant also testified that the corrections officer only physically checked the handcuffs once, rather than twice, and also only checked his right handcuff. [AB 5] He testified that in fact the corrections officer tightened the right handcuff before double-locking it. [AB 6]

**{11}** Viewing all of the above evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that there was sufficient evidence to support the jury verdict beyond a reasonable doubt that Defendant did not act in self-defense. *See Slade*, 2014-NMCA-088, ¶ 13.

**{12}** We recognize both that Defendant testified on his own behalf and that the district court properly instructed the jury on the elements of self-defense. After hearing all the testimony and evidence, "the jury was free to reject [the d]efendant's version of the facts." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Further, it was for the jury to resolve any conflicts and determine weight and credibility in the testimony. *See State v. Salas*, 1999-NMCA-099, ¶ 13, 127 N.M. 686, 986 P.2d 482. We do not reweigh the evidence, and we may not substitute our judgment for that of the fact-finder, as long as there is sufficient evidence to support the verdict. *State v. Griffin*, 1993-NMSC-071, ¶ 17, 116 N.M. 689, 866 P.2d 1156. In light of all of the above, we conclude that the State presented sufficient evidence to prove beyond a reasonable doubt that Defendant did not act in self-defense when he kicked the corrections officer.

**{13}** Accordingly and for the foregoing reasons, we affirm Defendant's conviction.

**{14}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**ZACHARY A. IVES, Judge**